# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| R. TODD NEILSON,<br>Trustee of the Chapter 11 Bankruptcy<br>Estate of Reed E. Slatkin,<br><br>  Plaintiff,<br><br>vs.<br><br>JOANNE MCGUIRE, et al.,<br><br>  Defendants. | 8:05CV392<br><br>REPORT and<br>RECOMMENDATION |

This matter is before the court on Joe Ann McGuire's[1] Motion for Hearing and Objection to Garnishment (Filing No. 5). On November 22, 2005, the court held a hearing on Ms. McGuire's motion. The plaintiff was represented by counsel and Ms. McGuire appeared *pro se*. During the hearing, the court received into evidence documents related to social security income (Exhibit 101) and a Union Bank of California account statement (Exhibit 102). After the hearing and with leave of court, the Ms. McGuire submitted documents related to a settlement from Nationwide Insurance (Exhibit 103). **See** Filing No. 11. The plaintiff filed a brief (Filing No. 8) in opposition to Ms. McGuire's motion.

## BACKGROUND

The plaintiff obtained a judgment against Ms. McGuire in the United States Bankruptcy Court for the Central District of California, Northern Division. **See** Filing No. 1. The plaintiff then registered the judgment in the United States District Court for the District of Nebraska and initiated the garnishment action. Ms. McGuire contests the garnishment of $3,907.02, held by First National Bank of Omaha. Ms. McGuire contends the funds are protected from garnishment because they are social security benefits.

---

[1] Ms. McGuire's name is spelled incorrectly in the caption due to the spelling in the complaint. However, the court will refer to her with the correct spelling of her name.

## FINDINGS OF FACT

In 2004, Ms. McGuire received $781.00 each month in social security Benefits. In 2005, Ms. McGuire received $793.00 each month in social security benefits. **See** Exhibit 101, p. 6. Such funds were deposited directly into her account held at PNC Bank in Ohio. Ms. McGuire provided the court with bank statements for PNC Bank for November 2004, and December 30, 2004 through October 27, 2005, and from First National Bank of Omaha (FNBO) for November 2004, and July 7, 2005 through October 6, 2005. **See** Exhibit 101.

In addition to social security benefits, Ms. McGuire received alimony payments in the amount of $130.25, which Ms. McGuire deposited into the PNC Bank account on November 5, 2004, January 31, 2005, and March 9, 2005. Ms. McGuire also received alimony payments in the amount of $140.15, which she deposited into the PNC Bank account on May 13, 2005, June 3, 2005, August 3, 2005, August 30, 2005. On January 5, 2005, Ms. McGuire made a deposit into the PNC Bank account in the amount of $286.49, which she states is her normal alimony payment ($130.25) plus additional funds owed to her on a quarterly basis from her ex-spouse for health benefits. Similar deposits were made into the PNC Bank account in the amount of $296.39, on June 29, 2005, and October 13, 2005.

On April 28, 2005, Ms. McGuire made a deposit into the PNC Bank account in the amount of $1,276.09. The April 28, 2005 deposit included alimony, the quarterly health benefits payment and a settlement. The settlement, the sum of $1,000.00, stems from an automobile accident on October 14, 1999. The settlement check was for $1,500.00, $500.00 of which went to Ms. McGuire's attorney for reimbursement of court costs. Ms. McGuire states the remaining $1,000 was reimbursement for medical expenses she had paid beyond the insurance coverage. **See** Exhibit 103.

Ms. McGuire made transfers from the PNC Bank to First National Bank of Omaha (FNBO) in the amount of $1000.00 each on four occasions, October 28, 2004; July 7, 2005; August 29, 2005; and September 12, 2005. **See** Exhibit 101. Ms. McGuire earned interest on such funds of $7.02, by October 6, 2005. There is no evidence of any

2

withdrawals from the FNBO account. FNBO is now holding $3,907.02 in funds in an account for Ms. McGuire. **See** Filing No. 6 (Interrogatory Response).

**CONCLUSIONS OF LAW**

Federal Rule of Civil Procedure 69 provides for enforcement after judgment is entered. Rule 69(a) directs that this court look to the applicable state law, in this case Nebraska, for practice and procedure on a writ of garnishment unless a federal statute controls. The Social Security Act provides:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407(a).

Social security benefits received by the beneficiary and deposited in a bank accounts remain exempt from execution under 42 U.S.C. § 407. ***Philpott v. Essex County Welfare Board***, 409 U.S. 413, 416 (1973) (funds on deposit "retained the quality of 'moneys' within the purview of § 407"); ***Havelock Bank of Lincoln v. Hog Confinement Sys., Inc.***, 335 N.W.2d 765, 766 (Neb. 1983). Additionally, social security benefits are protected from attachment, levy and garnishment even if they are commingled with funds from other sources. ***S & S Diversified Servs., L.L.C. v. Taylor***, 897 F. Supp. 549, 552 (D. Wyo. 1995); ***NCNB Fin. Servs., Inc., v. Shumate***, 829 F. Supp. 178, 180 (W.D. Va. 1993) **aff'd** 45 F.3d 427 (4th Cir. 1994) (recipient of social security benefits commingled with other funds entitled to protection as to those funds reasonably traceable to social security income). Ms. McGuire has the burden of proving by a preponderance of the evidence that the funds in the FNBO account are not subject to garnishment. **See** ***Giove v. Stanko***, 882 F.2d 1316, 1319 (8th Cir. 1989); ***First Nat'l Bank of Omaha v. First Cadco Corp.***, 205 N.W.2d 115, 120 (Neb. 1973); **see also** ***S & S Diversified***, 897 F. Supp. at 552.

There is no evidence before the court showing the origination of the funds deposited into the FNBO account on October 28, 2004. However, according to the monthly statements in evidence, approximately seventy-four percent of the deposits into the PNC Bank account from October 28, 2004 through September 12, 2005, result from social security benefits. The remaining twenty-six percent originated from sources other than social security benefits, such as alimony payments and settlement proceeds. The evidence clearly shows the funds paid into the FNBO account were drawn directly from the PNC Bank account. Therefore, Ms. McGuire has sustained her burden of showing seventy-four percent of the proceeds deposited into the FNBO account from July 7, 2005 to October 6, 2005, are reasonably traceable to social security income. On the date of the answer to the garnishment the FNBO account totaled $3,907.02. The court will subtract the initial $1,000.00. Seventy-four percent of $2,907.02 is $2,151.20. Accordingly, the court will recommend Ms. McGuire's objection to the garnishment be sustained in the amount of $2,151.20 and denied in all other respects. Ms. McGuire has not met her burden of proving the remaining funds are not subject to execution. As a result, the amount of $1,755.82 is subject to the garnishment. Upon consideration,

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON that:**

Joe Ann McGuire's Objection to Garnishment (Filing No. 5) be sustained in the amount of $2,151.20.

### ADMONITION

Pursuant to NECivR 72.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 20th day of December, 2005.

BY THE COURT:
 s/ Thomas D. Thalken
United States Magistrate Judge